# EXHIBIT 1

Treva J. Hearne, NV State Bar No. 549542
**HAGER & HEARNE**
245 E. Liberty - Suite 110
Reno, Nevada 89501
Tel: (775) 329-5811
Fax: (775) 329-5819
Email: rhager@hagerhearnelaw.com
           thearne@hagerhearnelaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN GROSZ, BERNADETTE CHAVEZ, VICKI RAMSEY, MARY KRISTINA BISHOP, SANDRA BECKWITH, TONI POULSEN, KATHERINE LEAO and DENISE STEVENSON, | ) Case No. 2:07-CV-00697- FCD-KJM ) ) ) ) ) ) |
| Plaintiffs, | ) (PROPOSED) ) FOURTH AMENDED COMPLAINT ) |
| v. | ) ) |
| LASSEN COMMUNITY COLLEGE DISTRICT, HOMER CISSELL, BOARD OF TRUSTEES of LASSEN COMMUNITY COLLEGE DISTRICT, | ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiffs, by and through their counsel, HAGER & HEARNE, hereby bring this action to obtain redress for the deprivation and conspiracy to deprive Plaintiffs of their federally and state protected rights as hereafter alleged, and for intentional infliction of emotional distress and for defamation.

### STATEMENT OF THE CASE

This case arises from the violation of the right to be free of discrimination on account of gender and retaliation because of seeking to protect the rights guaranteed by the Constitution to be free of that discrimination. The Plaintiffs have suffered retaliation, discrimination in employment, emotional distress and interference with their professional positions because of the acts of the District and Homer Cissell. Because of

*(vertical left margin)* **HAGER & HEARNE** 245 E. Liberty St., Ste 110 Reno, NV 89501 (775) 329-5800, FAX (775) 329-5819

1

this discrimination, the Plaintiffs have suffered adverse employment actions that have resulted in wrongful termination for some of the Plaintiffs, hostile work environment, loss of benefits, loss of promotion, harassment at the workplace, and being required to do the work assigned to positions held by men plus their own job duties for no added compensation

## JURISDICTION

1. This case arises under 42 U.S.C § 1983 and the First and Fourteenth Amendments, Title VII, in particular § 2000(e) to the United States Constitution which provides the bases for jurisdiction under Title 28 and Title 42. Plaintiffs also invoke this Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C., Sections 2201 and 2202. Plaintiffs were also subjected to retaliation when they opposed sexual discrimination in the workplace.

2. The venue of this action is properly placed in the Eastern District of California pursuant to 28 U.S.C. § 1391 because Plaintiffs' claims arise in this district, more particularly, Lassen County, California.

## PARTIES AND STANDING

3. The Plaintiffs are all citizens of the United States, and were residents of Lassen County, California, when the events occurred and were employees of Lassen Community College District.

4. LASSEN COMMUNITY COLLEGE DISTRICT is a political subdivision of the State of California, that employs more than one hundred employees.

5. Upon information and belief, HOMER CISSELL was the President of Lassen Community College and the Superintendent of Lassen Community College District when the events and circumstances of this matter occurred, but was acting outside the scope of his duties but under the color of state law when he deprived the Plaintiffs of their rights to equal protection and due process.

6. The events leading to the violations recited herein took place within the political boundaries of the State of California, County of Lassen.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

## GENERAL ALLEGATIONS

7.  The Plaintiffs are all female employees or former employees of Lassen Community College District.  All Plaintiffs were working when Homer Cissel was the President and Superintendent of the District and Homer Cissel was President and Superintendent when the events herein occurred.  All events that led to the filing of this complaint occurred beginning with the employment of Homer Cissel  in July 1, 2002, and continued to on or about July 3, 2007 .

## SPECIFIC ALLEGATIONS

8.  Plaintiff Karen Grosz was hired on a year to year contract as the Dean of Instructional Services.

9.  Grosz has a Ph.D. in Education and had many years of experience to assume the duties of cleaning up a curriculum at the District which, at the time, was charged with numerous "minimum conditions" violations by the Chancellor's Office.

10.  Examples of Plaintiff Grosz's extensive and varied experience, include serving as President of the Academic Senate for California Community Colleges ("CA CCs") in 1987 and being re-elected in 1988.

11.  On appointment by Governor George Deukmejian, Plaintiff Grosz served as a member of the Board of Governors for CA Community Colleges from 1989-1991; she had full voting privileges and also participated in closed session to evaluate Chancellor David Mertes. During her three years serving as a full member, the Board approved and implemented the comprehensive reform for the CA CCs, known as AB 1725. Plaintiff Grosz has also served as an ex-officio member of the New Hampshire Community Technical College System Board of Trustees from 2001-2003 and President of one of the merged colleges in the system. Plaintiff Grosz also served from 1995-2001 as Chief Academic officer for the Connecticut Community-Technical College System. Her vast array of experience working in both administration and teaching positions amply prepared her for the position as Dean of Instructional Service at Lassen Community College.

3

12.     As Dean of Instructional Services, Plaintiff Grosz assumed the duties of two male employees who left the College in Spring 2005 before her arrival.

13.     In addition, after her arrival, from August 18, 2005 until June 12, 2006, Dr. Cissell left unfilled the position of Dean of Student Services and assigned the duties and responsibilities associated with that position to Dr. Grosz; thus overall, Dr. Grosz assumed the duties and responsibilities of three positions, all which were formerly held by male administrators.

14.     The Dean of Student Services supervises numerous complex and specialized operations, so much so the Fiscal Crisis Management Assistance Team representative Cheryl Miller noted the combined positions were more than one person should be asked to accomplish, noting that approximately three-quarters of the campus staff reported to Dr. Grosz.

15.     Dr. Cissell responded that he himself would take the job of Dean of Student Services, but he continued to assign and delegate more and more work in excess of Plaintiff Grosz contracted-for duties.

16.     Dr. Cissell demanded that Plaintiff Grosz accept blame for his mistakes, including, but not limited to a verbal request in January followed by others on February 27, 2006 and again on February 28, 2006 that she take the entire responsibility for the delay in the preparation and distribution of the Spring 2006 class schedule.

17.     Dr. Cissell made these requests with the knowledge that the Office of Instructional Services had an onerous workload exacerbated by his failure to create and fill the associate Dean of Instruction position Dr. Cissell had promised Grosz when she was hired, as well as the critical need to correct numerous "minimum conditions" violations that occurred prior to her hire, many of which had to be corrected before the class schedule could be compiled and published.

18.     Dr. Cissell threatened Plaintiff Grosz that unless she took full responsibility for the delay in the creation and distribution of the Spring Schedule, which would absolve him as well as Chris Alberico, a male, of any blame from the Board of Trustees for any loss of enrollments that followed from delay in schedule distribution, he would recommend that the Board not renew her contract, which would, in effect, terminate it.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

4

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

19.    Plaintiff Grosz refused to take the responsibility and read a letter to Dr. Cissell and the Board of Trustees at the March 7, 2006 Board meeting concerning Dr. Cissell's threat not to renew her contract, which the Board and Dr. Cissell both either failed to address or simply ignored.

20.    In June 2006, Dr. Cissell reinstated the office of Student Services as a separate department under his direction thus reducing Plaintiff Grosz's workload. He continued, however, to assign additional work to the Office of Instruction.

21.    For example, in June 2006, he directed Dr. Grosz to assume and complete on short notice the June 30, 2006 minimum conditions work assigned to the Registrar, Chris Alberico, a male.

22.    On July 23, 2006, Dr. Cissell demanded that Karen Grosz prepare two reports for the July 24, 2006 Board meeting because the Registrar, Chris Alberico, had not prepared the enrollment data necessary for these reports.

23.    Other similarly situated male employees, such as the Registrar, when assigned more work, were not only released from completing some of their core job duties, but also received a stipend.

24.    While Plaintiff Grosz held the position of Dean of Instruction, Dr. Cissell assigned the Office to report on horse stall fees, notwithstanding the fact that Horse Barn Stall fee collection had already been assigned to a male employee, along with a monthly stipend.

25.    The monthly stipend remained with the male employee who was not assigned to the Office of Instruction even though the report on horse stall fee collection was assigned to Dr. Karen Grosz's office. These are only a few examples of duties reassigned to Plaintiff Grosz and her staff by Dr. Cissell and for no additional compensation was ever paid.

26.    After Plaintiff Grosz began work in 2005, Dr. Cissell publicly and privately criticized her and permitted others to criticize her performance, which had the effect of encouraging others to also criticize her work.

27.    In public Board sessions, Dr. Cissell spoke to Dr. Grosz in a demeaning fashion, but he did not similarly demean male employees.

28.     After Grosz filed a letter saying that she had a hostile work environment, Dr. Cissell continued to undermine and override Dr. Grosz's administrative authority, further hampering her ability to work and increasing the hostility of the workplace by reinstating classes which Dr. Grosz had canceled because they failed to conform with Title 5 of the Education Code. Dr. Cissell directed Plaintiff Grosz to reinstate classes with two or three students, even though Dr. Cissell repeatedly informed and insisted that classes had to have a minimum of fifteen (15) students in order to remain open and be financially worthwhile. However, after Dr. Grosz conducted a review of class enrollments and canceled those with fewer than fifteen students to be offered and cover costs, Dr. Cissell repeated the 15 student minimum in meetings at outreach sites and was quoted in the local papers.  Instead of supporting the cancellation of fewer than 15 student classes, Dr. Cissell chastised Dr. Grosz and questioned her capabilities as Dean of the Office of Instruction patronizingly offered to help Dr. Grosz with class cancellations and also told top administrators that they would make class cancellation decisions jointly in cabinet meetings, further humiliating Plaintiff Grosz with the implication that she could not perform this job duty herself.  Dr. Cissell did not criticize male employees in this manner, even those employees who were not completing their job duties.

29.     However, in response to Plaintiff Grosz's specific request for direction, Dr. Cissell offered only vague criticism and continued to criticize Dr. Grosz's work. On May 26, 2006, Dr. Cissell issued an unfounded letter of reprimand for unprofessional conduct during a meeting of the assessment technician screening committee in his office. Dr. Cissell would not accept suggestions contrary to his ideas from Plaintiff Grosz although he accepted such suggestions and criticism from male administrators in cabinet meetings.

30.     The grievances, letters and memos filed by Plaintiff Grosz with Dr. Cissell and the Board of Trustees fully informed and put the Board of Trustees on notice of the harassing and discriminatory behavior, actions and comments of Dr. Cissell. However, the Board failed to respond to the grievances but gave Dr. Cissell authority to issue warnings, denying employees due process protection

31.     Dr. Grosz suffered professional humiliation when Dr. Cissell assigned large and complicated workloads to Plaintiff Grosz that interfered with the completion of her stated job duties, when he, as well, assigned menial tasks, such as reporting to Trustees on horse barn stall fees without compensation causing her embarrassment and humiliation.

32.     Dr. Cissell has humiliated Plaintiff Karen Grosz during public Board meetings. On July 24, 2006, at a public meeting of the Board of Trustees, Dr. Cissell demanded a response to a question from Plaintiff Grosz that a trustee had posed to Dr. Cissell.  Plaintiff Grosz explained that this matter was not her agenda item and she had no knowledge of it.  In response, Cissell stated that many items under his name were, in fact, prepared by others, suggesting that Plaintiff Grosz should have known the answer. Dr. Cissell's response humiliated and embarrassed Karen Grosz by implying that she was unprepared.  Dr. Cissell did not do this to male Deans in a public meeting.

33.     Another occurrence of humiliation to which Dr. Cissell subjected Karen Grosz, took place on May 18, 2006.  On May 18, 2006, while at a screening meeting of co-employees with whom Plaintiff Grosz worked, Dr. Cissell accused Plaintiff Grosz of not following Board policies in a recommended hire.  Another employee and Plaintiff Grosz responded that the screening committee had followed policy procedures which allow a screening committee to submit up to three (3) names, but that Dr. Cissell refused to consider single best qualified candidate recommended by the screening committee.  Dr. Cissell sent Dr. Grosz a formal letter of reprimand on May 25, 2006, for unprofessional conduct "for posturing in front of Committee members that Plaintiff Grosz knew more than the President." Plaintiff Grosz filed a grievance regarding that on May 25, 2006. Rather than following Board policy and procedure, Dr. Cissell sent a formal letter of reprimand on June 7, 2006, for unprofessional conduct.  In contrast, Dr. Cissell accepted such corrections at other meetings from a male employee who openly disagreed with the President in front of other employees but received no reprimand leading to dismissal from college employment.

34.     After being hired at Lassen College, Dr. Grosz undertook a review of the district's faculty qualifications to ensure the district followed minimum conditions and

avoided further financial penalties by the Chancellor's office. When Cissell directed Plaintiff Grosz on January 19, 2007, to reinstate a part-time faculty who had been cut from the schedule because of having only eminence qualifications, Plaintiff Grosz pointed out to Dr. Cissell that Lassen College eminence qualifications had been rejected by the Chancellor's office, since the Chancellor's Office had ceased to accept eminence as a qualification to teach. Thus, Dr. Grosz cautioned against Dr. Cissell's directive to restore a part-time faculty member to the data base of qualified faculty and give her classes to teach.  The Chancellor's office had disqualified many Full Time Equivalent enrollments ("FTEs"), the measure by which the College is reimbursed by the State, because the college had used eminence as a qualifier. Dr. Cissell blamed Plaintiff Grosz for the loss of FTE's even though she had not been an employee when those "minimum conditions" violations occurred.

35.    When the Plaintiff Grosz, on advice from her Attorney, refused to answer questions concerning alleged fraud on the part of Katherine Leao because Katherine Leao was a Co-Plaintiff in a Complaint against the college, Dr. Cissell reprimanded Karen Grosz and placed a letter in her personnel file that she was insubordinate.  The male Registrar had loss of apportionment, violated more rules of the Chancellors Office than the Plaintiff Grosz but did not receive a reprimand that resulted in the loss of his position.

36.    Dr. Cissell in October 2006, while Plaintiff Grosz was on worker's compensation stress leave, removed her campus e-mail privileges without notice to her, prompting college employees and contacts from other colleges to think that Plaintiff Grosz had been fired when they received a reply that "Delivery to the following recipients failed. KGrosz@lassencolleg.edu."  This caused Dr. Grosz further humiliation and additional stress.  When a male college employee the Registrar and others, were on stress leave, Dr. Cissell did not similarly remove his campus e-mail privileges.

37.    In April 2007, Dr. Cissell had Plaintiff Grosz's administrative assistant removed from the office and campus by police officers without giving Dr. Grosz notice. When Plaintiff Grosz wrote a letter stating that Dr. Cissell's action undermined the work product of her office, Dr. Cissell failed to respond to her concerns.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

8

38.     In 2007, Plaintiff Karen Grosz was denied travel privileges when she applied to attend the NRA Convention to promote the gunsmithing program, recruit students and increase college enrollments.  Male employees were not denied the funds and have traveled to this convention on prior occasions nor had male coaches been denied funds to travel to games to recruit athletes in the same time frame.

39.     The Board of Trustees went into closed session at the July 25, 2006 meeting to discuss "existing litigation" from Dr. Karen Grosz, even though Plaintiff Grosz had not filed a Complaint against the District. During the meeting, the Attorney for the College told Dr. Grosz that Trustees would discuss her grievance appeal filed June 22, 2006. Following the meeting, Dr. Cissell told Plaintiff Grosz that she would hear the Board's decision on her grievance appeal.  However, the Board did not report any action taken in closed session, and Plaintiff Grosz never received a response to her grievance appeal from the Board. This suggests that the Board discussed personnel matters regarding the professional performance of Karen Grosz in closed session.

40.     Additionally, in further violation of Board adopted policies and practices, grievances from Plaintiff Grosz were left unresolved and were not based upon the requirements of Board policies 4301 and 4382 to consider enumerated matters and to reply to the employee in resolving personnel issues.

41.     The failure to renew Plaintiff Karen Grosz's contract resulted in termination without providing her with the due process right to respond to negative allegations about her performance.

42.     Dr. Cissell has engaged in professional and public slander of Plaintiff Grosz at Board of Trustee meetings in 2006 and 2007 questioning her on Board items she had not prepared and permitting others to question her performance of her job duties and permitting trustees to criticize her performance and to direct additional work to her.  Dr. Cissell did not publicly criticize or question or permit trustees to criticize, question or assign additional work to male administrators at public board meetings.

43.     Plaintiff Grosz has been retaliated against by Dr. Cissell's and Lassen College's refusal to allow her to take early retirement after her contract was not renewed. In

9

addition, Dr. Cissell pulled the early retirement offer completely when it appeared that Plaintiff Grosz was the only employee who expressed interest in the offer.

44.     Plaintiff Grosz was denied the right to take a position as an instructor of English pursuant to Board Policy 2410 even though a full time instructor position was vacant at the time of termination of her contract for the position of Dean of Instructional Services.  This decision was made in part because of a "less than stellar" evaluation that totally violated board policy and Plaintiff Grosz's due process rights.

45.     The Board of Trustees knew of these acts and since each non renewal of a contract requires a vote of the Board, the termination of the Grosz's contract indicates the Board's adoption of the acts of Dr. Cissell as the policy of the Board.

46.     On August 7, 2006, Plaintiff Grosz filed a Charge of Discrimination with the California Department of Fair Employment and Housing.

47.     On September 11, 2006, all Plaintiffs filed a Government Code claim against the District stating that women had experienced discriminatory treatment and adverse employment actions and that this treatment was ongoing.

48.     On October 25, 2006, the District rejected the Government Code claim stating that the Code claim was rejected as of that date.

49.     Plaintiffs all filed charges of discrimination with the United States Equal Employment Opportunity Commission stating that they had been specifically treated differently than male employees with similar positions and re-stated the claims that have been stated in this complaint, i.e. they had been required to do the work that had been assigned to men and not given additional pay for this work, that they had been instructed by the Dr. Cissell  to take responsibility for all errors found by the Chancellor's Office for the District in allocation of FTE's and to take the blame for all mistakes even if the Dr. Cissell made the mistake and that they have suffered retaliation for grieving the discriminatory treatment and that it was ongoing.   The charges recited the discrimination to Plaintiffs Poulsen, Chavez, Bishop, Beckwith, and Ramsey.

50.     Plaintiff Grosz was issued a right to sue letter on December 18, 2007; Plaintiff Beckwith was issued a right to sue letter on March 7, 2007; Plaintiff Poulsen was issued a right to sue letter on March 5, 2007; Plaintiff Chavez was issued a right to sue letter on

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

10

March 5, 2007; Plaintiff Ramsey was issued a right to sue letter in March, 2007; and, Plaintiff Bishop was issued a right to sue letter in March, 2007.

51.     Plaintiffs filed these claims in the United States District Court, Eastern District of California.  These claims were dismissed.  The dismissal was appealed.  The Ninth Circuit reinstated some of the federal claims and reversed the dismissal of the state claims with prejudice.  These claims are filed within thirty days of the mandate.

52.     Plaintiff Bernadette Chavez has been employed as faculty teaching psychology classes at the District since 1973. She received her Bachelor's in Psychology in 1968 and her Masters in Special Education Psychology from Chico State University in 1971.

53.     Plaintiff Chavez has received the teacher of the year award for more than twenty five (25) of the thirty eight (38) years of her career at the District.  No male teacher has received the teacher of the year award as often as Plaintiff Chavez has.

54.     Dr. Cissell arrived at Lassen College during the 2002-2003 school year. Ms. Chavez was on Sabbatical Leave that school year.  Ms. Chavez returned to Lassen College for the 2003-2004 school year, after she completed her Sabbatical. Ms. Chavez's assignment included Psychology, Student Government Advisor, and Student Activities Coordinator.  In February of 2004 Dr. Cissell wrote a letter to Ms. Chavez praising her work at Lassen College. Ms. Chavez continued to work with the same assignment for the 2003-2004 and 2004-2005 school years. Sometime during late 2005, Dr. Cissell began treating Plaintiff Chavez differently than similarly situated male faculty members at the Lassen Community College District. Dr. Cissell's refusal to discipline aggressive and violent male co-workers who had attacked and threatened to attack female faculty members created a dangerous hostile work environment. As a result, Plaintiff Chavez worked in fear for her life, safety and well-being. Further, Cissell's inaction created a hostile work environment which discriminated against women and placed them in a disadvantaged and prejudiced position.

55.     Additionally, Dr. Cissell refused to discipline male instructors who issued threats via newsletters that defamed the Plaintiff Chavez on campus by stating that she was attempting to destroy the District.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

11

56.     Robert "Bob" Lorek, an employee of the District attempted to physically attack Plaintiff Tina Bishop in an office directly across from Plaintiff Chavez's office in February 2006. Plaintiff Chavez witnessed the incident. Dr. Karen Grosz was meeting with Ms. Chavez in Ms. Chavez's office when the incident occurred.  Dr. Grosz and Ms. Chavez heard loud noises, a male voice shouting, and then the building shook.  Ms. Chavez opened her office door and observed Mr. Lorek body slamming Ms. Bishop's office door and shouting obscenities directed at Ms. Bishop.  The door frame of Ms. Bishop's office was shaking.  Ms. Chavez asked Mr. Lorek what he was doing and told him to stop and to leave.

57.     Tina Bishop and Plaintiff Grosz called and reported the incident to the police. Kevin Jones, who was working for the District Attorney at that time, wrote a letter and investigative report indicating that Lorek's action and violent behavior were part of an escalating pattern and that the Plaintiffs were instructed by Cissell not to interact or communicate or have any contact with Mr. Lorek if they could avoid doing so.

58.     It was not until after a male police officer recommended that Dr. Cissell take action, that Dr. Cissell removed Lorek from campus but also placed Lorek on paid administrative leave for an extended period.

59.     In early 2002 Plaintiff Chavez had complained to the District that security was inadequate at the District in light of the instances of student violence across the country.  She reported that there was little or no lighting on the campus, there was only one entrance and exit to the campus, the buildings and offices were unlabeled and that as a result, the police and fire department lacked maps and any potentially crucial information regarding the location and organization of the campus.

60.     A study was completed regarding this matter as a result of Plaintiff Chavez's complaint.  The study stated that security at the District was very inadequate, but the Board of Trustees and the management of the District failed and refused to implement any of the recommendations of the study to protect faculty at the District. This refusal constitutes an attempt to constructively terminate the female instructors intimidated by the physical threats and to create a hostile environment for those female instructors including the Plaintiff Chavez.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

12

61.     In late 2005 / early 2006, Plaintiff Chavez reported that there were pictures on MySpace of male students in the Lassen College Residence Hall with guns in their hands. When this matter was investigated by the Susanville Police, the Residence Hall Manager had responded that he found guns in the Residence Hall and had reported his finding to Dr. Cissell.  Dr. Cissell told the Residence Hall Manager not to report these incidents to Police but to instead to Dr. Cissell.  A male athlete student was arrested as a result of the investigation.

62.     The effect of lack of security impacts the female instructors more than the male instructors.  The sources of the violence against the female instructors are male faculty members and male students. Overall, the work environment is hostile and unsafe as a result.

63.     In late 2005, Plaintiff Chavez witnessed Lorek screaming, verbally threatening a student who was working in the office next to Chavez. The student had locked herself in the office for her own safety and well-being. The student filed a complaint with Dr. Grosz.

64.     On April 11, 2006 in an open session of the Board of Trustees of the District, without notice to Plaintiff Chavez, Dr. Cissell read a letter of an alleged complaint by a student. The alleged complaint stated that Plaintiff Chavez had caused the student fear after the attack by the male employee on Tina Bishop and that the student would quit school because of this.  Dr. Cissell had no independent support for this allegation and read the letter for the purpose of slandering the Plaintiff Chavez before the Board of Trustees and the public and in retaliation for her complaint about lack of security and escalating violence.

65.     Plaintiff Chavez filed a grievance with the teachers union against Dr. Cissell and the District in late April, 2006.  Ms. Chavez also filed an EEOC Complaint against Dr. Cissell and the District in August, 2006.

66.     Plaintiff Chavez has received written and unfounded criticism from Dr. Cissell in alleging that Plaintiff Chavez had in her possession confidential information about students.  These allegations from Dr. Cissell arise out of an effort to retaliate against Plaintiff Chavez after she was called to testify to the Lassen County Grand Jury

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

concerning Lassen College, after Plaintiff Chavez had signed a "no confidence" statement against Dr. Cissell, after Ms. Chavez had filed a grievance against Dr. Cissell and after the Plaintiff Chavez had filed an EEOC complaint against Cissell and the District.

67.    Upon information and belief, Dr. Cissell has placed items on the closed session agenda which were criticisms and personnel matters affecting and pertaining to Plaintiff Chavez all in violation of Cal. Gov't Code, § 54957 in 2006.

68.    Consequent to Ms. Chavez filing a grievance and an EEOC complaint, Plaintiff Chavez was removed as the Advisor to the Student Government and Student Activities Coordinator, positions which would allow her to teach one or two classes in Student Leadership and receive 20% release time compensation.  However, in removing Plaintiff Chavez, Dr. Cissell placed an unqualified person in the position and then a male teacher without experience in the position; especially considering that Plaintiff Chavez had taught this class for more than ten years and was well qualified for that position. Instead, Dr. Cissell replaced her with the wife of a male associate who was unqualified and then replaced her with a male faculty member who had no experience in the position and had never taught the classes at Lassen College.  Dr. Cissell did this in retaliation for the complaints of unequal treatment by the Plaintiff Chavez.

69.    Due to Plaintiff Chavez's association with the other female employees who have joined her in filing complaints against the District and Cissell, the District and Cissell have retaliated against Bernadette Chavez by overloading her class schedule with more students in each class, exceeding forty (35) students per class in Psychology during the 2007 - 2008 academic year. Plaintiff Chavez carries a full time student load substantially in excess of the class load carried by similarly situated male employees, in retaliation for her complaints and filing of claims.

70.    An alleged student complaint with false information against Plaintiff Chavez was read by Dr. Cissell during the April 11, 2006, Lassen College Board meeting; in conspiracy with a student. Defendant Cissell failed and refused to give notice to Plaintiff Chavez in violation of Gov't Code, §54957 in 2006. As part of her assignment, Plaintiff Chavez taught the Student Government, served as the Faculty Advisor to the Student Government, and was in charge of Student Activities.  Early in the 2006 Fall Semester,

when Plaintiff Chavez went to retrieve her teaching materials from the Student Government Office so that she could teach her classes, Ms. Chavez discovered that her teaching materials were missing and so were many documents that were kept in the office, including those from the locked cabinet with students confidential information used for student elections. Afraid that the materials and documents had been stolen, following protocol and procedure, Ms. Chavez called both the police department and the Head of Campus Security and Maintenance, Eric Rudolfson, to report stolen materials and documents. Additionally, Ms. Chavez tried to contact the Student Government President and Vice President.  The Student Trustee and Vice President responded and informed Ms. Chavez that they had entered the Student Government office with Reina Branum and that they had proceeded to remove the missing documents, records and class material.  Among these documents were confidential student information which were kept in a locked file cabinet. Mr. Rulofson made the comment to Ms. Chavez that she wasn't the Student Government Advisor.  Ms. Chavez stated that she had signed a contract that said she was.  Following the incident, Ms. Chavez contacted her direct supervisor, Dr. Karen Grosz, and asked what Mr. Rulofson was talking about. Dr. Grosz did not know either.  Dr. Grosz sent several e-mails to Dr. Cissell.  As a result, Ms. Chavez was removed from teaching the class and was no longer Associated Student Body Advisor or in charge of Student Activities. After a period of two (2) weeks, Cissell falsely accused Plaintiff Chavez of having direct knowledge of the location of the missing documents and of being directly involved or responsible for the loss of those documents. Cissell knew the whole time who had taken the documents and where they were.

71.    Plaintiff Vicki Ramsey has been employed by the District since 1995 as an Administrative Assistant in Human Resources.

72.    Since 2003, Plaintiff Vicki Ramsey has been treated differently than similarly situated male employees in that she has been required to assume the work assigned to other positions held by male employees for less than equivalent pay since 2005. The treatment she has suffered is consistent with the developing pattern and practice present during Dr. Cissell's period of employment.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

15

73.     Plaintiff Ramsey has requested retention of seniority and requested the right to receive year for year credit on the salary schedule for each year of her employment when she was transferred. However, she was denied this right when Dr. Cissell transferred her to another position classification while other similarly situated male employees continue to receive credit for the years worked even though they were transferred also. Plaintiff Ramsey's transfer and request to the Dr. Cissell for equivalent treatment occurred on June 29, 2004 and has continued to the present.

74.     Plaintiff Ramsey's employment status has been repeatedly threatened by Defendant because of her status as a female employee who associates with the other female employees who have filed claims with the EEOC and FEHA against the District and Dr. Cissell through the former Director of Human Resources who stated to her that Dr. Cissell intended to fire all women who filed claims of discriminatory treatment.  On October 4, 2006, Dr. Cissell stated to the Managers Meeting employees in response to a comment about persons who sued him (in these approximate words) that:

> Anyone can be fired.  It's easy to fire people.  I can fire anyone.  And if they sue, I am prepared to spend a half a million dollars.  I can drag it out for seven years and even if they win, we'll have seven years at this college and they will no longer be welcome here.

75.     Dr. Cissell has consistently referred to the people that "sue" as the enemy.

76.     He also referred to Barbara Beno, President of the Accrediting Commission as a "tough old broad" in a manner that was insulting to all women who exercise any authority and this was stated by Cissell to Ramsey.

77.     Plaintiff Ramsey was not evaluated in 2003 and 2004 when Dr. Cissell was her supervisor while other similarly situated male employees were evaluated and received increased wages because of those evaluations.

78.     Plaintiff Ramsey was repeatedly harassed in her position by not receiving her transfer rights, by being ignored in her work and by being required to do more work than similarly situated males and by the former Director of Human Resources at the direction of Dr. Cissell because of her filing an EEOC complaint against the District, all in violation of the law and Board Policy 4011, 4012. These events began in 2006 and continued until

16

the date that the Director of Human Resources was relieved of her duties in the fall of 2007.

79.     Plaintiff Ramsey has been retaliated against because of her association with other female employees and because of her complaints filed against the District in making a hostile environment wherein she is threatened with termination or reassignment to a position of lesser pay and told by other employees that Dr. Cissell has reprimanded her for having access to personnel files and divulging confidential information to others, all of which is false and has not occurred.  Dr. Cissell has only ever stated these allegations to other co-employees without giving Plaintiff Ramsey an opportunity to respond to the allegations.  Dr. Cissell did not accuse other male co-workers that worked as co-workers with Plaintiff Ramsey.

80.     Toni Poulsen was employed as a female volleyball coach and instructor at the District and has been so employed since 1999/2000.

81.     During her time as coach while Dr. Cissell was the President and Superintendent of the District, she was treated differently than similarly situated male coach employees. Additionally, as a result of the discrimination against her, her predominantly female students have been discriminated against as well. Moreover, male coaches, specifically Glen Yonan, Mark Nareau, Rex Branum, and all male wrestling coaches have been given preferential treatment and more funding for their sports programs.

82.     On April 11, 2006, Dr. Cissell and the District read derogatory letters regarding Poulsen in open session without notice to the her and without affording her an opportunity to comment. These actions are all in violation of the Brown Act.  Poulsen has been professionally slandered and humiliated by Dr. Cissell accusing her of incompetence in her position, in violation of Cal. Gov't Code, § 54957.

83.     A member of the Board of Trustees of the District reprimanded Poulsen at the April 18, 2006 meeting and repeated the statements made against Poulsen again without notice to her or an opportunity to respond.  These letters attributed derogatory comments about Dr. Cissell to Poulsen which were untrue.  Upon information and belief, no letters criticizing male employees or faculty have been read aloud in public at Board of

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

Trustee meetings. In fact when five female athletes sent letters to the Board of Trustees regarding harassment by a male Athletic Director in March of 2002, the letters were not read aloud and no response was made to the women complaining according to the directions of Dr. Cissell to the Board.

84.     Poulsen and another female coach were made to share office space while even part time male coaches have private office space. Female coaches were the only coaches required to share a small office space unsuited to the needs of their positions and demeaning to them as female coaches.

85.     Poulsen had to schedule her coaching activities off campus when other similarly situated male coaches who coach male students in District athletics are not required to do so.  She was also specifically required to schedule female students off campus for the 2005- 2006 academic year.

86.     Poulsen had been denied funding sources for female athletic events for her female students that are instead available to male coaches coaching male students during the 2005/2006 school year and the 2006/2007 school year. As a result, the women's athletic classes and sports failed for lack of funding while male sports and men's athletic classes have full funding and do not fail.  Poulsen has repeatedly asked for equivalent funding for women's volleyball when they are required to travel to other schools for games but her requests  have been refused.  In response to complaints, Dr. Cissell threatened to cancel the women's volleyball team activities altogether.

87.     Poulsen was falsely imprisoned in her office by Glen Yonan, an athletic director who accused her of writing negative comments on an Accreditation faculty survey when those comments were submitted in confidence to the Dr. Cissell.  When Poulsen complained about the harassment from Athletic Director Yonan with her supervisor, she was told to report to Dr. Cissell.  Dr. Cissell refused to counsel the Athletic Director and failed to respond to Poulsen's complaint.

88.     Poulsen has been retaliated against because of her association with other female employees and because of her complaints filed against the District and Dr. Cissell with the EEOC and other claims, all in violation of the law. She has had her funding for her female athletic teams denied and her access to campus facilities to hold her classes

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

denied, and she has been retaliated against by Dr. Cissell's threats to cut the women's volleyball team from the District.

89. Bishop has been employed as an instructor and faculty member since 1974 at the District.

90. Beginning with her Bachelor of Arts in Speech Pathology in 1972, and then earning her Masters of Education with emphasis in College Student Development in 1986, she has held various educational and administrative positions, including but not limited to the position of Disabled Students Coordinator, Learning Disability Coordinator and Learning Skills Coordinator; additionally, she has taught Public Speaking, Reading and Learning Disability classes. She has served as a counselor and lead counselor for many years.

91. She has never had negative evaluations or assessments; instead receiving praise and commendation for her work and experience.

92. Since 2003 and the arrival of Homer Cissell, however, she experienced discrimination, recrimination and unfair treatment in contrast to previous years and in contrast to the treatment and expectations of similarly situated male faculty members.

93. On several occasions, Defendant has failed to compensate her for work done even though similarly situated male faculty has been compensated. On September 6, 2006, Bishop was elected to the position of Division Chair of Liberal Arts but Dr. Cissell intentionally failed to sign her contract for three months; as a result, she worked for three months without pay for that position. Upon information and belief, there is no legitimate or otherwise business related reason or necessity for withholding payment. The pay was given to her retroactively after she had completed the work.

94. Male faculty members and colleagues have received compensation for work they have failed to do or, as in the case of Lorek, administrative leave, in other words not reprimanded but rewarded.

95. In October 2004, Dr. Cissell eliminated the position of Articulation Officer and thus removed Bishop from a key position that she had held on a consistent basis. Dr. Cissell had no legitimate reason, nor justification for eliminating the position of

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

Articulation Officer; indeed, it was completely against general policy and past practice. The removal of Bishop was without cause and in retaliation for the allegations that she provided information to the California Community College Chancellor's Office which resulted in an investigation of the District and Dr. Cissell.

96.    Bishop complained about the removal but Dr. Cissell failed to take any action and did not restore her to her position. It was only until Plaintiff's Bishop's fellow <u>male</u> faculty members, particularly M. Giampoli, appalled by Cissell's blatantly arbitrary action, directly and explicitly confronted Cissell and expressed their frustration about his lack of professionalism and administrative mistakes, did Dr. Cissell reinstate both the position of Articulation Officer and Bishop as its holder.

97.    In general, the Articulation Officer has the responsibility of ensuring that the District's courses and curriculum are considered equivalent, or are articulated, with the state's other four year universities and higher education institutions. Every other District community college has traditionally had an Articulation Officer since it is crucial for the college's classes to have equivalent weight and value for their students. Because of her unique experience, Bishop had the necessary expertise for developing such a curriculum and coordinating with the state universities and with the University of Nevada, Reno.

98.    Dr. Cissell has consistently and intentionally disrupted and interfered with the ability of Bishop to complete and perform her contractual duties. After Bishop slipped and damaged her rotator cuff, she took sick leave and was receiving workman's compensation but was required to stay at home. In contrast to previous years and traditionally accepted behavior, Dr. Cissell expressly prohibited and prevented other counselors to have any communication whatsoever with Bishop who was the lead counselor at the time. Since Dr. Cissell had eliminated all of the other counseling positions, except for one other counselor who was newly-hired and brand-new, the other counselor had nowhere to turn for needed guidance and help in working effectively and this was done in retaliation for Bishop complaining about discrimination and inferior treatment.

99.    Dr. Cissell has professionally slandered Bishop and in doing so violated Cal. Gov't Code, § 54957 by stating that she unduly influenced another employee to sign a no

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

confidence petition in 2006 against Cissell. Such an allegation is false and unfounded since none of the alleged events actually occurred.

100.    Bishop has filed complaints in 2006 against the District for the acts of Dr. Cissell.  These complaints have not been resolved continuing into 2007 by allowing Bishop to explain the circumstances and give evidence that vindicates her, all in violation of the adopted policies 4011, 4012 of the Board of Trustees and the District.

101.    Dr. Cissell prohibited female colleagues from associating with Bishop and threatened their positions of employment if they associated with Bishop in retaliation for her work in the Union and her circulation of a "no confidence" petition against the Dr. Cissell.  Male instructors who served as Union advisors were not reprimanded, harassed or removed from positions.

102.    Bishop has been deprived of due process and the Defendant has abused due process regarding her complaints and claims about the allegations that she used undue influence on fellow employees to sign the no-confidence petition, allegations which are false. Instead, they have required Bishop to arbitrate her claim without notice to her of the substantive claims in the arbitration prior to the arbitration and without disclosing the evidence and statements by the employee, if any, against her prior to the arbitration.

103.    Bishop was physically threatened and stalked by a male employee in February 2006. However, Dr. Cissell refused to terminate the male employee's employment because he had "to earn a living" and, even after physically threatening Bishop, the male employee was allowed to remain on campus for more than one month.

104.    In fact, an investigator working in conjunction with the Lassen County District Attorney, conducted an investigation and reported his findings to Dr. Cissell about the danger posed by the male employee's (Lorek's) harassment and stalking behavior. Upon hearing the results, the college attorney in fact commented about the problematic history of this employee. However, again, instead of taking any disciplinary or punitive actions, as required by policy and general tradition, Defendant simply placed Lorek on paid administrative leave for one year.

105.    Defendant District and Cissell failed and refused to provide security so that threatened female employees will have a means to protect themselves even though a

21

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

report was prepared for the District in 2003/2004 that stated that the District had severely inadequate security.  Bishop filed a complaint/ grievance about the physical attack. The failure of the District to provide security for her a female employee and the lack of response to Bishop's grievance are in violation of the policies of the District.

106.    Bishop has been retaliated against because of her association with other female employees and because of her complaints filed against the District and Dr. Cissell by being removed from positions, failing to receive pay for completed work, and having reprimands placed in her file that had no basis in fact by Dr. Cissell in retaliation for her complaints that she was treated differently as a female employee and that she was retaliated against as a female employee.

107.    Sandra Beckwith has been a counselor and program director for the developmentally disabled for the District for more than eleven years.

108.    Since 2004, Beckwith has suffered harassment from Robert Lorek, the same male instructor who harassed and physically attacked other female instructors and female administrators, including Bishop at the District in February, 2006.

109.    On February 19, 2004, Robert Lorek accosted Beckwith when her student, Angela Fisher, was present and threatened her verbally and insulted her, calling her a "douche bag." His actions are in violation of Education Code Section 87708, ("any person who assaults or abuses any academic employee in the presence or hearing of a community college student is guilty of a misdemeanor").  Beckwith sent a written complaint and email with the Education Code excerpted to Dr. Cissell, who dismissed her complaint by stating that "statutory citations hold little merit in arguing cases." He failed to take any measures to resolve the increasing problems with Robert Lorek's violent behavior.

110.    On February 28, 2006, Lorek again accosted Beckwith and Bishop in front of students and staff outside of the Humanities Building on campus and insulted and berated them for several minutes. He called Beckwith a "horrible person" and continued to demean her and her work. Following this incident, Beckwith filed a documented grievance on February 28, 2006 to the Human Resources Department of the District regarding the harassment by the male instructor.  However, Beckwith was told by Dr.

22

Cissell to have no contact with the offending male instructor or she would be disciplined. The male instructor was not given a reprimand that required him to have no contact with the female instructors whom he had threatened, and eventually was rewarded with one year administrative leave at full pay.

111.    Beckwith has been publicly reprimanded and humiliated by Dr. Cissell by being told that her grievance was rejected against the male employee and that she was to have no contact with him.  Beckwith was reprimanded as a response to her grievance that the male instructor continued to harass her.  These acts demonstrate a pattern and practice of retaliation against women employees.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. §1983 - Equal Protection Claims)

112.    Plaintiffs restate and reallege each and every paragraph of this complaint as if fully set out herein.

113.    Plaintiffs have been treated differently, and the result of that treatment was adverse to their employment positions and benefits than similarly situated male employees of the District by Defendant Cissell.  The primary motivation was  because of their female gender.

114.    Plaintiffs are entitled to the equal protection of the laws and to due process of law under the Fourteenth Amendment of the United States Constitution.

115.    Defendant Cissell, acting under color of state law, discriminated against Plaintiffs because of their gender by treating them differently than similarly situated male employees and that different treatment resulted in a hostile working environment for the Plaintiffs where they were required to work in intimidation and fear of physical attack by similarly situated male employees, loss of pay, loss of their employment and loss of benefits.  The Plaintiffs have been required retain attorneys and expend costs in order to prosecute this claim.

116.    The Plaintiffs have been required to retain attorneys and expend costs in order to prosecute this claim.

**SECOND CLAIM FOR RELIEF**

**(42 U.S.C. 1983 - Substantive Due Process claims)**

117.      Plaintiff Grosz has been deprived of her property interest, her employment as stated in paragraphs 14 & 60.  Defendant Cissell imposed a hostile work environment on the Plaintiff in which she feared the loss of her employment, professional reputation and the possible adverse employment actions against her, including job discrimination. The Plaintiff has been deprived of opportunities for advancement, retirement, employment, proper evaluations and have been made to take on extra work since 2004 until she was terminated.

118.      The primary motivation for the loss of employment, loss of benefits, threat of loss of employment and slander to their professional reputations of the Plaintiffs by the Defendant Cissell is the gender of the Plaintiffs which is female.

119.      Plaintiffs, as employees of the District, were entitled to due process protection of freedom from arbitrary action which jeopardized their property interests in their public employee jobs pursuant to Board Policy 4118.2, 4225, and the contracts with the bargaining units of the employees wherein the Board has adopted or agreed that the employees of the District will only be terminated or have adverse employment actions against them for cause.  For the reasons stated herein, the Plaintiffs should not have been subjected arbitrarily to the fear of losing their jobs or losing their jobs all in retaliation for the express request for protection of their rights by grievance and filing complaints.

120.      Plaintiffs were also entitled to due process liberty interests in their reputations as honest public employees.  The Defendant Cissell, by his actions and statements, has deprived the Plaintiffs of these rights since 2003 until July 3, 2007 and Defendant Cissell knew or should have known that his conduct was unreasonable and violated the Constitutional rights of the Plaintiffs.

121.      The Defendant Cissell has conducted adverse employment actions, including but not limited to: termination of employment, public humiliation, lack of evaluations, failure to promote, failure to grant increased pay for increased work,

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

unequal working conditions  and threatened adverse employment actions against the individual plaintiffs.  As a result of a personnel policy that does not follow the adopted policy of the District in District Policy 4011, 4012, 4116.1, 4116.2,  but maintains a system for making decisions about promotions, assignments, and compensation which has had a disparate impact on these Plaintiffs because of their gender, female, and which is not justified by business necessity.

122.    Plaintiffs have suffered damages because of the loss of their rights and the loss of their present and future employment, benefits, equal pay and promotions, all caused by the Defendant Cissell acting under color of state law.

123.    The Board of Trustees of Lassen College knew of the discriminatory acts against female employees that were being carried out by Defendant Cissell because of grievances filed with them, complaints made to them by the Plaintiffs and others, and did not make any attempt to stop the acts and have adopted those acts as the policy of the Board and the Board adopted Cissell's recommendation to terminate female employees by voting to terminate their employment without proper evaluations and without allowing the female employees to answer allegations against them since 2003 until the present, all done at the recommendation of the Defendant Cissell.

124.    The Board of Trustess and the Defendant Cissell have conspired with others and among themselves by holding meetings to terminate female employees in violation of the Brown Act by not allowing the female employees to answer the allegations against them and by denying promotions and pay raises to female employees while male employees were given promotions and pay raises to deprive the Plaintiffs of their rights from 2003 to the present.

125.    Plaintiffs were required to retain counsel to prosecute these claims.

///

///

///

///

25

**THIRD CLAIM FOR RELIEF**

**(Violation of the rights guaranteed by the First Amendment)**

126.    The Plaintiffs incorporate by reference all paragraphs and allegations of this complaint as if fully set out herein in their entirety.

127.    The Plaintiffs have a right to associate with their peers and other female employees who refused to "obey" Defendant Cissell.

128.    The Plaintiffs have a right to speak freely regarding their complaints about treatment by Defendant Cissell and the Board of Trustees according to the express written policies of the Board in Board Policies 4136, 4011, 4012 and others.

129.    The Plaintiffs Grosz and  Chavez were summoned to the Grand Jury proceedings through the spring and summer of 2006 and gave sworn testimony about the circumstances of their employment and the complaints that had been filed as reiterated throughout this complaint as adverse employment acts taken against them because of their gender, female, and other incidents where the Defendants misused funds, violated regulations required by the Chancellor's office regarding the allocation of FTE funding and apparently violated the Americans with Disabilities Act.

130.    The Defendants violated the Plaintiffs' right to freedom of association and freedom of speech by their acts of retaliation and discrimination after the testimony of Plaintiffs was given to the Grand Jury of Lassen County in 2006 by the acts against them by Defendants stated in paragraphs 8 - 21 and 28 - 33, all adverse actions which took place after the testimony at the Grand Jury of Lassen County.

131.    The Defendant Cissell knew that Bishop and others signed a letter of lack of confidence in the President/Superintendent Cissell and he retaliated against Bishop by encouraging other employees to file false grievances against her in 2006 and placed a letter of reprimand in her personnel file in 2006 accusing her of exercising undue influence against an employee to sign the petition of no confidence against the Defendant Cissell.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

132.     The Defendant Cissell knew that Bernadette Chavez, Mary Kristina Bishop and Sandra Beckwith had made statements to the Chancellor's office about the discrimination against women based upon their gender in 2006 and the Defendant Cissell issued orders that no one could speak to the Chancellor's office but himself and persons that he designated after he learned of these contacts which were solicited by the Chancellor's Office.

133.     The Defendant District through its Board of Trustees had knowledge that Defendant Cissell has acted in a manner to deprive the Plaintiffs of their freedom of speech and association because of the discussion of personnel matters in closed session, the grievances and complaints filed by the Plaintiffs and have failed to discipline Cissell or stop the acts of Cissell and have adopted this violation of the Plaintiffs' rights as policy.

134.     The Plaintiffs suffered and continue to suffer damages because of the acts of the Defendants.

135.     The Plaintiffs were required to retain counsel to prosecute these claims.

## FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

136.     Plaintiffs restate and re-allege each and every paragraph of this complaint as if fully set out herein.

137.     The Defendants have, with reckless disregard and deliberate indifference, and full knowledge of their acts and the damages that their acts have caused continued to act in derogation of the rights of the Plaintiffs.

138.     The Defendants have, with reckless disregard and deliberate indifference, intentionally made publicly humiliating comments and slanderous statements repeatedly about the Plaintiffs and without notice to the Plaintiffs.

139.     The Defendants have intentionally interfered in the ability of the Plaintiffs to continue and advance their professional positions.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

140.     The acts of the Defendants, Board of Trustees of the District to promote a system that allows a President of the District to require female employees to "obey" the President and accept blame for his mistakes, fail to pay or treat them as similarly situated male employees, to violate their First Amendment and Fourteenth Amendment rights, to allow male employees to physically and verbally harass and threaten the female employees, and the failure to carry out policies that require that the employees act in a manner in compliance with the law, all constitute acts that are so outrageous as to shock the conscience of ordinary and reasonable citizens.

141.     These outrageous acts are the direct cause of the emotional distress that was suffered by the Plaintiffs Grosz and Chavez such that they were forced to take medical leave and seek treatment from a licensed professional for stress in the fall of 2006 and the spring of 2007.

142.     The Defendants have intentionally inflicted severe emotional distress upon the Plaintiffs herein by their outrageous conduct and acts in violation of the law, and in violation of adopted policy and protocol.

## FIFTH CLAIM FOR RELIEF

## (Violation of rights under 42 U.S.C. §2000(e) - Retaliation

143.     Plaintiffs restate and re-allege each and every paragraph of this complaint as if fully set out herein.

144.     Plaintiffs have been denied their employment, the benefits of their employment, and suffered adverse employment actions including but not limited to termination, loss of benefits, loss of promotion, no increase in pay, different and more adverse working conditions than similarly situated male employees at the District.

145.     Plaintiffs have been subjected to a hostile work environment wherein they were physically threatened by male employees, humiliated by male employees, specifically Defendant Cissell at public Board meetings, not allowed to respond to allegations of breach of duty against them, and must attend a workplace where there is a lack of adequate security.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

146.     Similarly situated male employees have been given pay increases, promotions, favorable treatment at the District and the Plaintiffs have been required to take reassignment of duties previously assigned to male employees and complete those duties regularly with no additional compensation.

147.     The primary motivation for the adverse employment acts against the Plaintiffs was based upon their gender, female and retaliation for declaring their rights.

WHEREFORE, Plaintiffs pray this Court enter an order providing as follows:

1.   For damages due and owing to Plaintiffs and each of them for the wrongful deprivation of their individual rights with an award of damages in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for each Plaintiff;

2.   For general damages in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) to each Plaintiff;

3.   That a declaratory judgment be issued that Plaintiffs' rights were violated as alleged above;

4.   That Plaintiffs have and recover from the Defendants, compensatory damages, liquidated, exemplary damages and such other monetary relief as may be deemed appropriate in amounts to be determined at trial;

5.   That Plaintiffs have and recover from the Defendants, pre-judgment interest as may be determined by statute and rule;

6.   That Plaintiffs recover from the Defendants their costs, including reasonable attorneys' fees, together with such other remedies as may be provided by law;

7.   Pursuant to Federal Rules of Civil Procedure, Rule 38, Plaintiffs demand a trial by jury on all issues of fact in this action;

///

///

///

///

///

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

8.  That the Court grant such other and further relief as it deems just and proper.

**HAGER & HEARNE**

_____
Treva J. Hearne, Esq.
245 E. Liberty St., Ste. 110
Reno, NV  89501
Tele: (775) 329-5800
Attorneys for Plaintiffs

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819